IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FLORENTINO QUINTANA,

     Plaintiff,

v.                                   CIV 01-621 JP/KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff suffers from diabetes mellitus and hypertension. He applied for benefits in February 1997 based on symptoms associated with his diabetic condition. *See Administrative Record* ("*Record*") at 15, 68, 77. In a comprehensive opinion, an Administrative Law Judge ("ALJ") found Plaintiff can perform a full range of sedentary work and, relying on the grids at Step Five, found Plaintiff nondisabled. On appeal, Plaintiff submitted additional evidence. *See id.* at 186-99. The Appeals Council considered the evidence but summarily affirmed, *see id.* at 5 & 7, thereby making the ALJ's September 25, 1998 decision final for the purposes of this review under 42 U.S.C. § 405(g).

This matter is before the Court on Plaintiff's Motion to Reverse or Remand. *Doc. 8.* Plaintiff contends that because he suffers from nonexertional impairments, the ALJ erred by failing to: (1) give controlling weight to treating physician Dr. Arnold Valdivia; (2) properly assess credibility; and (3) obtain vocational expert testimony. I have carefully considered the entire record and recommend that the motion be denied and the decision of the Commissioner affirmed.

### I. Background

Plaintiff was born in 1951 and worked from 1982 to 1993 as a truck driver, painter or in the construction industry. *Id.* at 122, 132. He was forty-six years old when he applied for benefits based on complaints of blurry vision, headaches, anxiety, depression, hand and feet numbness, difficulty concentrating and remembering, and fatigue. *See id.* at 77, 96, 99, 107-09, 111. He also complained of dizziness as a side-effect of the medicine samples he took for his diabetes since he is unable to afford medication. *Id.* at 90, *see also id.* at 111.

Plaintiff alleged an onset date of June 1994. Apparently this is the date he suspected he became diabetic, because there are no medical records from that period. *See id.* at 117, 132, 164. Rather, the medical records begin in June 1996, the date when Plaintiff claimed his eye doctor told him he was "totally blind" and should consult a doctor "to check diabetes." *Id.* at 81; *see also* 127.

Within several days after the visit to the eye doctor, Plaintiff began seeing Dr. Arnold Valdivia. *Id.* at 130. Dr. Valdivia's notes and lab paperwork plainly indicate that he diagnosed Plaintiff as diabetic and saw Plaintiff frequently and regularly to assess Plaintiff's lab results and otherwise treat him for that condition. However, Dr. Valdivia's records are not detailed and are largely illegible. *See id.* at 138-53, 172-80. With one exception,[1] the notes in Dr. Valdivia's handwriting do not detail Plaintiff's symptoms or why he was visiting the doctor. Rather, they record statistical information such as lab results and the prescribed medications. *See id.* at 138-53, 172-80. The one entirely legible note was made by someone else. It reflects that in November 1996, Plaintiff was denying "any major problems" and, although his hands were warm,

---

[1] The note by Dr. Valdivia on August 21, 1997 is after the initial denial of Plaintiff's claim and is partially legible. It states Plaintiff visited Dr. Valdivia "to find papers for disability, states he is [illegible] not able to work [illegible]." *Id.* at 180.

he denied having any lack of sensation in them.  *Id.* at 142.

Because the treating physician notes are so "sketchy and quite hard to read," a consulting physician recommended that Plaintiff see a neurologist in order to evaluate his complaints of "headaches, blurred vision, numbness of hands and feet and trouble concentrating."  *Id.* at 131. The Social Security Administration ("Administration") therefore asked Dr. Leonore Herrera examine Plaintiff.

Dr. Herrera noted that Plaintiff's vision is fine with glasses but that his diabetes was beginning to affect his eyes.[2]  She also observed that Plaintiff demonstrated the ability to "flex and extend the digits of the hand, writs, elbow and shoulder," "to grasp, hold, pinch, and manipulate small objects in the examining room without difficulty," and "is not limited functionally from standing, walking, sitting, or lifting."  *Id.* at 133.  She did find that the "paresthesia of [his] hands and feet limit his ability to climb stairs or run and walk when most acute."  *Id.*  She further notes his chronic fatigue in her "final diagnosis."  *Id.* at 134.  However, Dr. Herrera said nothing about Plaintiff's ability to concentrate.  The Administration denied benefits.  *Id.* at 53.

On reconsideration, the Administration considered the "diabetes residual functional capacity questionnaire" Dr. Valdivia had completed for it.  *See id.* at 135-37 ("diabetes RFC"). Dr. Valdivia indicated that Plaintiff's diabetes and hypertension were stable, but that Plaintiff exhibited symptoms of fatigue, episodic visual blurriness, excessive thirst, vascular disease/leg

---

[2]  She noted:  "bilateral cataracts with pterygium formation of the retina reveal AV narrowing and nicking with numerous little pseudo aneurysms;" "*[v]isual acuity testing was 20/20 bilaterally with glasses* for near and far vision and visual field are intact by confrontation.  AV narrowing [with] scattered retinal hemorrhage on funduscope exam;" "had visual acuity within normal limits, but did have cataract pterygium formation and funduscopic disease due to his diabetes."  *Record* at 133 (emphasis added).  She concluded that his "*advancing cataract and retinal disease may limit this visual perception in the near future*."  *Id* (emphasis added).

cramps, dizziness/loss of balance, retinopathy, diarrhea, kidney problems, frequency of urination, sweating, headaches, sensitivity to light/heat/cold.  Although Dr. Valdivia did not mark "difficulty thinking/concentrating" as a symptom, he did answer that Plaintiff's symptoms from diabetes "often" are "sufficiently severe to interfere with attention and concentration."  *Id.* at 135-36.  Dr. Valdivia also did not answer the question that asked him to "describe any other limitations that would effect your patient's ability to work a regular job on a sustained basis, including limitations on walking, sitting, standing, lifting, reaching, bending and any environmental limitations."  *Id.* at 136-37.  The Administration denied benefits.  *Id.* at 59-60.

Thereafter the ALJ held a hearing.  Although the record contained a residual capacity questionnaire by consulting physicians ("consulting RFC"), the ALJ's decision does not mention it.  The consulting RFC was based on Dr. Herrera's examination, the medical records and Dr. Valdivia's diabetes questionnaire and it found Plaintiff capable of medium work:  lifting 50 pounds occasionally; 25 pound frequently; stand and walk or sit a total of 6 hours in an 8-hour day; unlimited pushing and pulling; and no other limitations.  *See id.* at 153-61; *see also* 20 C.F.R. § 404.1567(c).

After the ALJ issued his decision, on appeal Plaintiff submitted another questionnaire by Dr. Valdivia ("Dr. Valdivia's later RFC").  This document is titled "statement of ability to do work related physical activities" and is similar, but not identical, to the form the consulting physicians used for their RFC assessment.  In contrast to the consulting RFC, Dr. Valdivia's later RFC found Plaintiff can do no work.  That is, although Plaintiff can lift 20 pounds occasionally and less than 10 pounds frequently, he can only stand and walk less than 2 hours in an 8-hour workday and must alternate sitting and standing to relieve pain or discomfort.  Furthermore, Dr.

Valdivia's RFC finds Plaintiff is limited in his ability to understand, remember, and carry out short and simple instructions and the limitations severe enough to "preclude <u>any</u> employment" *Id.* at 188-189 (emphasis original). As noted earlier, the Appeals Council considered Dr. Valdivia's later RFC and affirmed the ALJ's denial of benefits.

## II. Standard Of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

## III. Analysis

### A. Treating Physician RFC Opinions

Plaintiff contends that the ALJ failed to give controlling weight to Dr. Valdivia's opinion "on the issue of how the claimant's diabetic condition effects all aspects of his mental and physical health." *Doc. 9* at 9. He asserts that Dr. Valdivia's opinions are entitled to controlling weight because they meet "the requirements of both [Social Security Ruling] 96-2p and the criteria set forth by the Tenth Circuit in *Drapeau* [*v. Massanari,* 255 F.3d 1211 (10th Cir. 2001)]." *Doc. 11*

at 5.  I disagree.

To be given controlling weight, Dr. Valdivia's opinions must be "well supported by clinical and laboratory diagnostic techniques **_and_** [cannot be] inconsistent with other substantial evidence in the record."  *Castellano,* 26 F.3d at 1029 (emphasis added); *see also* 20 C.F.R. § 404.1527(d)(2).  Dr. Valdivia's scant medical records do not "well support" his subsequent opinion.  His records do not mention any of the symptoms he lists as disabling Plaintiff from doing work.  The one legible note by someone else shows Plaintiff was denying any "major problems" during the relevant period.

Moreover, Dr. Herrera's observations are contrary to those of Dr. Valdivia, and this is precisely why the ALJ rejected Dr. Valdivia's diabetes RFC opinions.  After reviewing the medical and testimonial evidence, the ALJ stated:

> I note the claimant's treating source . . . was of the opinion that due to emotional factors relative to his diabetes, he was "often" limited in attention and concentration and had a "moderate limitation" in the ability to deal with work stress [citing diabetes RFC]. Nonetheless, I cannot credit any of these limitations as they are not consistent with Dr. Valdivia's office notes that do not document he recorded any complaints, or objective findings, relative to the claimant's ability to concentrate or attend, and deal with work stress [citing office records].  Further, Dr. Valdivia did not outline any other limitations in the claimant's ability to perform work related activities.

*Record* at 21, 22.

The "degree to which the physician's opinion is supported by relevant evidence" and the "consistency between the opinion and the record as a whole" are the third and fourth criteria from *Goatcher v. United States Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995) that are quoted in *Drapeau.*  Thus, here the ALJ cited a specific legitimate reason for not

affording conclusive weight to the opinions Dr. Valdivia made in his diabetes RFC. *Goatcher,* 52 F.3d at 290; *see also e.g., Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir. 1987) (opinion properly rejected if it is "brief, conclusory, and unsupported by medical evidence").

In contrast, the ALJ in *Drapeau* "did not consider **any** of these factors in disregarding the treating physician's opinion." 255 F.3d at 1213 (emphasis added). While the ALJ's decision here could have been more detailed in explaining why he rejected Dr. Valdivia's opinions, the ALJ's failure to specifically cite *Goatcher* or discuss the weight he gave to each of the *Goatcher* factors do not warrant remand.[3]

---

[3] The Tenth Circuit recently addressed this issue in an unpublished opinion, which is not attached because I quote and discuss the relevant portions in detail below. *Smith v. Barnhart,* 2002 WL 531534 (10th Cir. 4/4/02).

In *Smith,* the Tenth Circuit held that the ALJ properly discounted a treating physician's opinion under third and fourth *Goatcher* factors "because he found that the opinion was not supported by other medical evidence." As support for this holding, the *Smith* decision cited *Castellano,* 26 F.3d at 1029 and

> *Westbrook v. Massanari,* 26 Fed. Appx. 897, 900 (10th Cir. Feb. 8, 2002) (ALJ properly discounted treating physician's opinions because they were inconsistent with and not supported by objective medical evidence and they were made on forms for the claimant's disability insurance carrier); *Phillips v. Apfel,* 185 F.3d 875, 1999 WL 503049, at *2 (10th Cir. July 16, 1999) (ALJ properly discounted treating physician's opinions because they were not based on objective tests or other medical procedures)."

*Smith,* 2002 WL 531534 at *10.

The court there also noted that the

> ALJ did not specifically explain what weight (if any) he gave to the first, second and fifth factors outlined in *Goatcher,* but these factors do not undermine the ALJ's decision to give little weight to Dr. McKee's opinion. . . . [in footnote] to the extent the ALJ erred by not stating that he considered these factors, any such error was

Dr. Valdivia's opinions in the later RFC that Plaintiff must alternate sitting and standing and cannot perform any job due to his limitations in was not before the ALJ. However, the Appeals Council properly refused to reverse on the basis of these new opinions. For the same reasons the diabetes RFC was not given controlling weight, there is likewise no medical evidence in the record supporting the new conclusions in the later RFC. Furthermore, a treating physician's opinion that his patient is disabled is not dispositive. That decision lies with the Commissioner. *Castellano,* 26 F.3d at 1029. I therefore find this issue without merit.

### B. Credibility Determination

Plaintiff argues that the ALJ erred in finding Plaintiff "overstated" his symptoms and functional limitations, *Doc. 9* at 10, because Dr. Valdivia's later RFC finds Plaintiff incapable of lifting more than 10 pounds frequently, standing and walking two hours a day, and must alternate sitting and standing, *Doc. 9* at 12. However, because the ALJ found Plaintiff can do sedentary work, his conclusion is consistent with Dr. Valdivia's weight and stand/walk limitations. Furthermore, although a need to alternate sitting and standing can preclude certain sedentary

---

harmless. *See Bernal v. Bowen,* 851 F.2d 297, 302-03 (10th Cir. 1988) (no reversible error in ALJ's non-compliance with regulations and statute where claimant is not prejudiced); *see also Wilson v. Sullivan,* 930 F.2d 36, 1991 WL 35284, at *2 (10th Cir. Feb. 28, 1991) (where sufficient evidence is present to sustain ALJ's decision under correct standard, remand not necessary).

In an analogous situation, the Tenth Circuit has rejected a "formalistic, factor-by-factor" requirement in all circumstances. *See Qualls v. Apfel,* 206 F.3d 1368, 1972 (10th Cir. 2000) ("our opinion in *Kepler* [*v. Chater,* 68 F.3d 387 (10th Cir. 1995)] does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.").

work,[4] here there is no medical evidence for Dr. Valdivia's opinion, and Dr. Herrera found no

sit/stand limitations. Also, Plaintiff did not indicate that his diabetes changed his ability to sit,

*Record* at 109, and testified as follows:

> Q. Do you have any other physical problems besides what we've
> talked about already?

[4] "Sedentary work" is defined as

> lifting no more than 10 pounds at a time and occasionally lifting or
> carrying articles like docket files, ledgers, and small tools. Although a
> sedentary job is defined as one that involves sitting, a certain amount of
> walking and standing is often necessary in carrying out job duties. Jobs
> are sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.

20 C.F.R. § 404.1576(a). "'Occasionally' [walking and standing] means occurring from very little up to
one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting
would generally total about 6 hours of an 8-hour workday." *Social Security Ruling 96-9p,* 1996 WL
374185 at *3; *see also e.g., Smith v. Barnhart,* 35 Fed. Appx. 805, 2002 WL 1023678 at *1 (10th Cir.
5/22/02) (unpublished) (quoting same); *Burns v. Apfel,* 145 F.3d 1345, 1998 WL 278535 at *2 (10th Cir.
1998) (quoting *Social Security Ruling 83-10,* 1983 WL 31251 at *5).

The Tenth Circuit holds that if a person needs to alternate sitting and standing, an ALJ cannot rely
on the grids:

> When a claimant's exertional level, age, education, and skill level (i.e.,
> work experience) fit precisely within the criteria of a grid rule, an ALJ
> may base a determination of nondisability conclusively on the grids. *See*
> *Trimiar v. Sullivan,* 966 F.2d 1326, 1332 (10th Cir. 1992); *see also* 20
> C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a) & Table No. 1; *Social*
> *Security Ruling 82-41,* 1982 WL 31389, at *1. When a requirement to
> alternate sitting and standing limits a claimant's ability to do the full range
> of sedentary work, as in this case, an ALJ may not rely on this shortcut
> method. *See Thompson,* 987 F.2d at 1488; 20 C.F.R. pt. 404, subpt. P,
> app. 2, § 200.00(e).

*Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999); s*ee also Ragland v. Shalala,* 992 F.2d 1056,
1059 n. 4 (10th Cir. 1993). Social security rulings also recognize that the need to alternate sitting and
standing may not support a finding that the claimant is capable of performing all sedentary work,
particularly in unskilled positions. *Soc. Sec. Ruling 83-12,* 1983 WL 31253 at *4. Indeed, the Tenth
Circuit reversed a decision of this district and noted that where "the claimant requires a sit/stand option, it
is inappropriate for the ALJ to rely on the grids, and he must consult a vocational expert." *Goodwin v.*
*Apfel,* 166 F.3d 1221 (10th Cir. 1998) (unpublished, but not attached).

A. No, just my arms, my hands, and my feet.

*Record* at 44. Accordingly, I also find this issue without merit.

### C. Vocational Expert

The ALJ relied on the grids to find Plaintiff not disabled. The grids "are tables prepared by the Secretary which evaluate a claimant's ability to work by matching the claimant's age, education, and work experience with his work capability." *Trimiar v. Sullivan,* 966 F.2d 1326, 1332 (10th Cir. 1992). They are a "shortcut that eliminate the need for calling in vocational experts" and "set forth presumptions regarding whether jobs exist in significant numbers in the national economy given the particular limitations possessed by the claimant." *Id.* (internal quotations and citations omitted).

Plaintiff argues that because he has nonexertional limitations the ALJ should have called a vocational expert. However, the vast majority of the limitations he relies on are all from Dr. Valdivia's diabetes RFC and later RFC: "mental limitations," *Doc. 9* at 6 (no cite to record); "episodic visual blurriness, dizziness/loss of balance, headaches, kidney problems, frequent urination, and sensitivity to light, heat, or cold," *id.* (citing diabetes RFC); "fatigue, excessive thirst, vascular disease, retinopathy, diarrhea," *id.* at 8 (citing diabetes RFC); "walk less than 2-hours in an 8-hour workday . . . alternate sitting and standing," *Doc. 11* at 2 (citing later RFC).

As discussed above, these limitations find no support in the record. Thus, the ALJ was not required to call a vocational expert based on these limitations. It is well settled that

> [t]he hypothetical question should include all – and only – those
> impairments borne out by the evidentiary record. . . . The VE
> relied on the limitations found by the ALJ, which are reflected in
> the RFC assessment form. The ALJ was not required to accept the
> answer to a hypothetical question that included limitations claimed

10

> by plaintiff but not accepted by the ALJ as supported by the
> record. . . . We conclude the ALJ did not err in relying on the VE's
> testimony.

*Bean v. Chater,* 77 F.3d 1210, 1214 (10th Cir. 1995); *see also Decker v. Chater,* 86 F.3d 953, 955

(10th Cir. 1996); *Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir. 1990).

     In his reply, Plaintiff asserts two additional nonexertional impairments – blindness and

limitations in hand dexterity. *See Doc. 11* at 3. Difficulty seeing is a nonexertional impairment.

*See Trimiar v. Sullivan,* 966 F.2d 1326, 1328 n. 3 (10th Cir. 1992); 20 C.F.R. § 404.1571(c)(iv);

20 C.F.R. § 404.1545(d). If a significant impairment, it can preclude reliance on the grids:

> Mr. Mose's vision clearly was impaired to some degree. The crux
> of the issue here is whether his vision problems constituted a
> significant nonexertional impairment. Only significant
> nonexertional impairments limit the claimant's ability to do the full
> range of work within a classification and prevent the ALJ from
> relying on the grids. *See Thompson v. Sullivan,* 987 F.2d 1482,
> 1488 (10th Cir. 1993). Otherwise put, the grids may still be used if
> a claimant has nonexertional impairments which do not significantly
> reduce the underlying job base. *See Evans v. Chater,* 55 F.3d 530,
> 532 (10th Cir. 1995) (ability to perform "substantial majority" of
> work in RFC assessment suffices for purposes of grids); *Glass v.
> Shalala,* 43 F.3d 1392, 1396 (10th Cir. 1994).

*Mose v. Apfel,* 201 F.3d 448, 1999 WL 1063829 at *3 (10th Cir. 1999) (unpublished but not

attached).

     Plaintiff argues that in May 1998, Dr. Valdivia requested that opthamologist Frank W.

Wyant see Plaintiff " and that Wyant noted Plaintiff's "vision in both eyes when corrected was

only 20/200," which qualifies as blind under a vision listing. *Doc. 11* at 3. This assertion

mischaracterizes the report, which stated that Plaintiff's visual acuity was "best corrected to

20/60" in the better eye. *Record* at 184; *see also id.* at 17. The 20/60 correction level alone is

insufficient to establish a significant nonexertional impairment as of May 1998:

Having carefully reviewed the record, we conclude that the ALJ's conclusion that Mr. Mose had no significant nonexertional impairments is supported by substantial evidence. In 1988, Mose underwent successful laser surgery on his eyes. After the treatments were completed, Dr. Wise rated his vision at 20/40 in his left eye, and 20/60 in his right eye. Mose failed to present any evidence showing that this slight visual impairment would prevent him from performing the substantial majority of work in the sedentary classification. There is no medical evidence that his vision worsened between the 1988 surgeries and the date on which his insured status expired.

*Mose,* at *3. Furthermore, the ALJ considered Wyant's report and noted that the assertion that Plaintiff "cannot see past ten feet . .. is not supported by the medical findings of record." *Record* at 17. Plaintiff does not argue otherwise in this appeal.

Hand dexterity is likewise a nonexertional impairment that can preclude reliance on the grids, *see Trimiar,* 966 F.2d at 1333-34, and Social Security Ruling 85-15 specifically notes that such limitations can be particularly significant for sedentary positions.[5] However, as the ALJ noted, Plaintiff's complaints of being unable to hold onto things was not supported by the medical evidence and was specifically contradicted by Dr. Herrera's observations. *See Record* at 20, 107,

---

[5]     c. Reaching, handling, fingering, and feeling require progressively finer usage of the upper extremities to perform work-related activities. . . . "Fingering" involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion. As a general rule, limitations of fine manual dexterity have greater adjudicative significance--in terms of relative numbers of jobs in which the function is required--as the person's exertional RFC decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work. The varying degrees of loss which can occur may require a decision-maker to have the assistance of a VS. However, a VS would not ordinarily be required where a person has a loss of ability to feel the size, shape, temperature, or texture of an object by the finger-tips, since this is a function required in very few jobs.

1985 WL 56857 at *6.

109. Because the nonexertional impairments are not supported by the record, the ALJ did not err in failing to call a vocational expert.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion to reverse or remand *(Doc. 8)* be denied.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE